# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PETITIONERS, DANIEL AND GAIL GREENE ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED | : | DOCKET NO. 04-1569 |
| VS. | : | JUDGE MINALDI |
| FLEETWOOD ENTERPRISES, INC. AND KITE BROS., L.L.C. | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court are plaintiffs' Motion for Leave of Court to File First Supplemental and Amending Complaint and Motion for Class Certification [doc. #s 36 & 25].[1]

### Background

Daniel and Gail Greene are the owners of a 2001 Fleetwood Discovery motor home. They contend that the motor home is defective because its Vetrolite fiberglass panels prematurely age and yellow. Accordingly, on July 1, 2004, the Greenes filed the instant suit on behalf of a nationwide class of similarly situated Fleetwood owners. The putative class action was filed in the 36th Judicial District Court for the Parish of Beauregard, State of Louisiana. Made defendants were Kite Bros. and Fleetwood Enterprises, Inc. *Id*. at ¶ 1.

On July 27, 2004, Fleetwood and Kite Bros. removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. On August 26, 2004, plaintiffs filed a motion to remand for lack of subject matter jurisdiction due to the presence of a non-diverse defendant –

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

Kite Bros. The removing defendants argued that plaintiffs had no reasonable possibility of recovery against Kite Bros., and that its presence should be disregarded for purposes of determining diversity (*i.e.* improper or "fraudulent" joinder). (Notice of Removal, ¶¶ 3-4). In a November 12, 2004, Memorandum Ruling and Judgment, the court agreed with defendants. (*See*, 11/12/04 Memorandum Ruling and Judgment).

On April 4, 2005, plaintiffs filed the instant motion for class certification. The motion was opposed. On May 27, 2005, plaintiffs filed a motion for leave of court to file a first supplemental and amending petition. The proposed amendment attempts to address some of the issues raised in Fleetwood's opposition to class certification. The amendment is opposed. Because the amendment potentially affects class certification issues, we address it first.

a) Leave to Amend

Leave to amend shall be "freely [granted] when justice so requires." Fed.R.Civ.P. 15(a). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court...." *Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 499 (5th Cir.1998). Yet, "[i]n the context of motions to amend pleadings, 'discretion' may be misleading, because FED. R. CIV. P. 15 (a) 'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. Nov. 1981)). A district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)(citation omitted).

In deciding whether to grant a party leave to amend, the court considers the following factors: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by

previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig, supra* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)(citing, *Foman*, 371 U.S. at 182).

Rule 15(a) does not impose a time limit for permissive amendment, but at some point, the time delay can be procedurally fatal. *Smith*, 393 F.3d at 595 (citations omitted). The outside limit for amendments is pretrial. *Id.* (citations omitted). The proposed amendment seeks to join "Fleetwood Homes of Indiana, Inc.;" dismiss Kite Bros., Inc.; and delete various theories of recovery and damage claims. Plaintiffs emphasize that the court has not established any formal deadline for the amendment of pleadings; that the trial is six months away (at the time the motion was filed); and that the proposed amendment will narrow the issues before the court.

Fleetwood argues that it will be prejudiced by the proposed amendment because new parties, new causes of action, and new damage claims will be *added*. Yet, as we read the amendment, the number of claims and elements of damage will be reduced. Moreover, in its opposition to the motion for class certification, Fleetwood admitted that "Fleetwood Motor Homes of Indiana, Inc." was the actual manufacturer of the motor home. (Opp. Memo., fn. 1).[2] Finally, Fleetwood (and the court) agree that plaintiffs have no reasonable possibility of recovery against Kite Bros. *See*, discussion, *supra*. In short, Fleetwood has not established any undue prejudice. *See generally*, *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (5th Cir. 1999).

---

[2] Nevertheless, the proposed amendment will not be allowed insofar as it seeks to join Fleetwood Homes of Indiana, Inc. Plaintiffs have not alleged the proposed party's citizenship for purposes of diversity (*i.e.* principal place of business and state of incorporation). *See*, 28 U.S.C. § 1332 and LR 7.7W. Plaintiffs should also ensure that they have named the correct corporate entity. *See*, discussion, *supra*.

3

Fleetwood next argues that the amendment will unduly delay this case because it will necessitate re-opening the class certification motion to allow it an opportunity to address the proposed complaint. Yet, as Fleetwood further explains in its brief, the proposed amendment does not cure the inherent deficiencies in plaintiffs' proposed class. We agree, and thus further briefing is unnecessary. *See*, discussion, *infra*.

Fleetwood next contends that because the proposed amendment does not resolve the inherent deficiencies in plaintiffs' putative class, the proposed amendment is futile. We disagree. A proposed amended complaint is "futile" if it fails to state a claim upon which relief can be granted. *Stripling v. Jordan Production Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000).[3] Fleetwood has not demonstrated that the proposed amended complaint fails to state a claim upon which relief can be granted. Indeed, if the amended complaint does not state a claim, then the initial complaint should have been dismissed, because the amended complaint alleges fewer claims and damages than the original.

In sum, the undersigned finds that the motion for leave to amend should be granted.

b) Standing

Before addressing the merits of the motion for class certification, Fleetwood questioned whether plaintiffs enjoy standing to bring this action. Of course, standing is an essential and unchangeable jurisdictional prerequisite. *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 318 (5th Cir. 2002). It is composed of three requirements: "the plaintiff must have suffered an

---

[3] In assessing futility, we apply the same standard as in a Fed.R.Civ.P. 12(b)(6) motion. *Id*. A complaint cannot be dismissed under Fed.R.Civ.P. 12(b)(6) unless it is beyond doubt that plaintiff can prove no set of facts which would entitle her to relief. *Id*. We also construe the complaint in a light most favorable to plaintiff and resolve all doubt in her behalf. *Id*.

4

injury in fact, there must be a causal connection between the injury and the conduct complained of, and it must be likely ... that the injury will be redressed by a favorable decision." *Id.*, (quoting, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S.Ct. 2130 (1992))(internal quotation marks omitted). Standing and class certification must be addressed on a claim-by-claim basis. *James v. City of Dallas, Tex.*, 254 F.3d 551, 563 (5th Cir. 2001).

An "injury in fact" is an "invasion of a legally protected interest which is . . . concrete and particularized." *Rivera, supra* (quoted source omitted). Here, the named plaintiffs allege that they are purchasers of a 2001 Fleetwood Discovery motor home whose Vetrolite fiberglass panels are prematurely aging and yellowing. (Petition, ¶¶ 2-3). The named plaintiffs further allege that the premature aging and yellowing substantially impairs the value of their motor home. *Id*. The foregoing suffices to allege a concrete, particularized, and actual injury stemming from ownership of the motor home.[4]

We note, however, that the petition seeks to certify a class not only on behalf of purchasers of a 2000-2003 Fleetwood Discovery, but also on behalf of lessees. (Petition, ¶ 12). Yet, merely because a plaintiff has been subject to injurious conduct of one kind does not mean that he possesses the necessary stake in litigating conduct of another kind, albeit similar, to which he has not been subject. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) Here, there are no allegations that either of the named plaintiffs ever leased a Fleetwood motor home. Moreover, the theory of recovery and the damages sustained by a lessee are not necessarily

---

[4] In its brief, Fleetwood emphasizes that the named plaintiffs do not share the same interest and injury as potential class members who did not purchase a motor home from Kite Bros. However, the court has previously recognized that the named plaintiffs do not have a reasonable possibility of recovery against Kite Bros. *See*, discussion, *supra*. Moreover, plaintiffs have amended their complaint to dismiss Kite Bros. *Id.*

shared by an owner.[5] Accordingly, the named plaintiffs do not have standing to represent a class of Fleetwood lessees.[6]

"Causation" dictates that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *James, supra* (citations omitted). Plaintiffs allege that Fleetwood was the manufacturer of the motor home, and that a defect in manufacturing caused the premature aging and yellowing. (Petition, ¶¶ 3, 5). Causation is sufficiently alleged.

To satisfy the third requirement of Article III standing, the named plaintiffs must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed in a favorable decision." *James*, 254 F.3d at 564 (quoted source omitted). In the case *sub judice*, the named plaintiffs (and the class) seek the cost of repairs and/or the reduction in the value of the motor homes due to the alleged defect. (Amended Petition, ¶¶ 10, 27).[7] These damages would likely remedy the alleged injury.

c) <u>Class Certification</u>

Rule 23's prerequisites must be rigorously analyzed by the district court. *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996); *Spence v. Glock*, 227 F.3d 308 (5th Cir. 2000). The party seeking certification bears the burden of proof. *Id.* The determination of whether certification of a class is appropriate involves a two stage inquiry. The first stage

---

[5] For a lessee, recovery will likely be heavily dependent upon the terms of the lease. Any gaps in the contractual provisions would be filled by laws governing leases.

[6] Even if the named plaintiffs had standing to represent a class of lessees, they would fail the typicality requirement of the class action analysis. *See*, discussion, *infra*.

[7] They also seek attorney's fees and costs. *Id*.

involves a determination of whether the case satisfies the prerequisites for any class action set out in Fed.R.Civ.P. 23(a). The second stage involves a determination of whether the case falls within the definition of one of the particular types of class actions set out in Fed.R.Civ.P. 23(b).

i) Rule 23(a)

Rule 23(a) requires that all class actions satisfy the following prerequisites:

1) "the class is so numerous that joinder of all members is impracticable" — numerosity;

2) "there are questions of law or fact common to the class" — commonality;

3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" — typicality; and

4) "the representative parties will fairly and adequately protect the interests of the class — adequacy.

*See, James*, 254 F.3d at 569.[8]

To meet the numerosity prong, " a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Id.* (quoted source omitted). In response to Fleetwood's opposition, plaintiffs have produced a list of 100 other Fleetwood Discovery owners who have experienced the same problems as the named plaintiffs, and who

---

[8] Fleetwood contends that plaintiffs are also required to identify the putative class with sufficient specificity. In *Forbush v. J.C. Penney Co., Inc.*, the Fifth Circuit stated that it was sensible to require a class to be defined with some specificity. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993). The instant plaintiffs have proposed a class consisting of all persons and/or entities in the United States who own, or owned, a 2000-2003 Fleetwood Discovery R.V., and suffered economic loss or damages due to a hidden defect which caused the fiberglass panels to prematurely age or yellow. (Petition, ¶¶ 12-13). We find that the proposed class is sufficiently specified.
We note that much of Fleetwood's argument focuses upon Kite Bros. and other putative un-named dealer defendants. However, plaintiffs do not now seek recovery against the dealers. *See*, discussion, *supra*.

have retained counsel for the named plaintiffs. (Pl. Exh. D). Plaintiffs have also adduced the affidavit of Rayford E. Easter who is the co-chairman of the Yellow Discovery Group. (Pl. Exh. E). The Yellow Discovery Group is an informal association of people who own or have owned 2000-2003 Fleetwood Discovery motor homes and have experienced yellowing of the fiberglass panels. *Id.* As of May 9, 2005, there were 480 members of the Yellow Discovery Group. *Id.* We find that plaintiffs have satisfied the numerosity requirement. *See, James, supra.* (numerosity satisfied where plaintiffs alleged over 100 class members out of 580 individuals who suffered injury).

To satisfy the commonality requirement, plaintiffs must merely demonstrate that there is at least one issue whose resolution will affect all or a significant number of the class members. *James, supra* (quoted source omitted). The threshold for commonality is not high or demanding. *Id.* The fact that some of the plaintiffs may have different claims or claims that may require some individual analysis is not fatal to commonality. *Id.* Two common issues in the case *sub judice* are whether the fiberglass panels prematurely age and yellow, and whether this condition constitutes a defect in the manufacturing process.[9]

The test for typicality focuses upon the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they seek to represent. *James*, 254 F.3d at 551 (citations omitted). Typicality does not require complete identity of claims. *Id.* The essential inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. *Id.* Again, the threshold for typicality is not demanding. *Id.*

---

[9] The related question of whether common issues predominate will be addressed in stage two of the certification analysis.

Nevertheless, one of several obstacles to plaintiffs' proposed class is that the alleged theories of recovery – redhibition for the named plaintiffs, and breach of implied and expressed warranties for the class – are not the same. Indeed, this is a recurring deficiency which impacts not only the typicality requirement, but also the adequacy of representation inquiry and the predominance analysis.

Under Louisiana law, redhibition is a buyer's exclusive remedy; he cannot bring a separate action for breach of contract or breach of express warranty. *Fusilier v. Ardoin*, 266 So.2d 531, 534 (La. App. 3rd Cir. 1972)(citations omitted); *see also*, *Molbert Bros. Poultry & Egg Co. v. Montgomery*, 261 So.2d 311, 314 (La. App. 3rd Cir. 1972). As Louisiana purchasers, the instant plaintiffs are particularly unsuited to advance a breach of express warranty claim on behalf of a nationwide class. *See, In re Ford Motor Co. Bronco II Product Liability Litigation*, 177 F.R.D. 360, 367 (E.D. La. 1997)("Louisiana does not recognize a claim for breach of warranty, but instead has a unique cause of action for 'redhibition' not recognized in other jurisdictions.").

We also observe that the named plaintiffs have not notified Fleetwood of the alleged defect in their motor home. (Pl. Ans. to Interr. No. 5; Def. Exh. C). While this does not necessarily present a problem against a manufacturer under Louisiana redhibition law, it does potentially affect the claims of class members under the laws of other states. *See e.g., Abele v. Bayliner Marine Corp.*, 11 F.Supp.2d 955, 961 (N.D. Ohio 1997)(under Ohio law, a breach of warranty claim requires plaintiff to show that the seller was given a reasonable opportunity to

9

cure the defects).[10] Again while not an issue under Louisiana law, at least in some other jurisdictions privity requirements limit a purchaser's warranty claims to the person or entity from whom the item was purchased. *See, Hamdan v. Land Rover North America, Inc.*, 2003 WL 21911244 (N.D. Ill. 2003); *Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082, 1097 -1098 (S.D. N.Y. 1995); *CertainTeed Corp. v. Russell*, 883 So.2d 1266, 1270 -1271 (Ala. Civ. App. 2003); and *Pack v. Damon Corp.*, 320 F.Supp.2d 545, 559 -561 (E.D. Mich. 2004); *Staudt v. Artifex Ltd.* 16 F.Supp.2d 1023, 1030 (E.D. Wis. 1998); *In re Ford Motor Co. Bronco II Product Liability Litigation*, 177 F.R.D. 360, 369 (E.D. La. 1997)(noting vertical privity requirements of some states).

Finally, the named plaintiffs seek to represent not only a class of current motor home owners, but also former owners. (Petition, ¶ 12). However, the named plaintiffs still own their motor home. (Ans. to Interr. No. 13). Obviously, at least part of the relief sought by the named plaintiffs (the cost of repair) will not be shared by former motor home owners. Instead, former motor home owners will be required to demonstrate that they sustained a loss when they resold their motor homes due to the alleged defect. Besides the individual nature of the damages sustained by former owners, privity issues will likely be amplified.

In sum, plaintiffs have not satisfied the typicality requirement. *See, Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)(due to the differences among the state laws, the named plaintiff's claims are not "typical" of the class).

---

[10] Plaintiffs argue that Fleetwood received notification of the alleged defect via the Yellow Discovery Group. (Easter Affidavit; Pl. Exh. E). However, a seller's actual knowledge of a defect from other buyers, does not excuse a buyer's failure to provide notice. *Brookings Mun. Utilities, Inc. v. Amoco Chemical Co.*, 103 F.Supp.2d 1169, 1177 (D. S.D. 2000).

The last consideration of Rule 23(a) is whether the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The "adequacy" requirement looks at both the class representatives and their counsel. *Jenkins v. Raymark Industries, Inc.* 782 F.2d 468, 472 (5th Cir. 1986). The named plaintiffs will be deemed inadequate as representatives only if their interests conflict with the interests of the class members. *James, supra.* Here, the Greenes' interests are plainly not antagonistic to the interests of the putative class members. After all, both the Greenes and the class members (owners) seek the same result. However, for the reasons discussed in the typicality prong of the analysis, the Greenes are not ideal class representatives because they do not share the same potential privity and notice hurdles as the class members. Indeed, by eschewing any intention to pursue remedies against the seller/dealers, the named plaintiffs have arguably impaired the recovery chances of some class members.[11] Accordingly, the named plaintiffs have not established that they will adequately represent the interests of the class.

ii) Rule 23(b)

Plaintiffs seek to certify the class pursuant to Fed.R.Civ.P. 23(b)(1)-(3). However, beyond reciting the rule and restating their cause of action, plaintiffs do not otherwise justify the applicability of Rule 23(b)(1)-(2). We likewise expend little effort in concluding that paragraphs (1) and (2) of Rule 23(b) are inapplicable here.[12] That leaves Rule 23(b)(3) which authorizes a

---

[11] Admittedly, the named plaintiffs face somewhat of a "Catch 22" in this regard. By excluding the dealers, plaintiffs have simplified the manageability and practicality of the certification process. Yet, in doing so, they have also arguably impaired the claims of some class members.

[12] Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward

11

class action if the prerequisites of subdivision (a) are satisfied, and questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the individual adjudication of claims. Fed.R.Civ.P. 23(b)(3). The predominance and superiority requirements are "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem Prods., supra.*

As an initial matter, plaintiffs appear to assume, without any choice of law analysis, that the laws of all 50 states and the District of Columbia will apply to the claims of the class. (Pl. Suppl. Memo., pgs. 4-5).[13] Nevertheless, the district court is required to know which law will apply before it makes a predominance determination. *Spence*, 227 F.3d at 313. By failing to present any choice of law analysis, plaintiffs have failed to meet their burden of showing that common questions of law predominate. *Id.*

Even if plaintiffs were correct in their assumption that the laws of all the states are applicable to all of the issues in this case, they still have not provided any extensive analysis of

---

                    customers; a government imposing a tax), or where the party must
                    treat all alike as a matter of practical necessity (a riparian owner
                    using water as against downriver owners)." Rule 23(b)(1)(B)
                    includes, for example, "limited fund" cases, instances in which
                    numerous persons make claims against a fund insufficient to
                    satisfy all claims.
*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 2245 (1997)(citations omitted). Plaintiffs have not established that any of the foregoing situations are applicable here.
        Moreover, to certify a class action under Rule 23(b)(2), injunctive relief, rather than monetary damages, must be the predominant form of relief pursued by plaintiffs. *James, supra*. Here, there are no allegations that plaintiffs seek injunctive relief. (*See*, Amend. Petition, ¶ 10, 27).

        [13] In diversity cases, federal courts apply the choice of law rules of the forum state. *Spence, supra* (citation omitted). In Louisiana, choice of law must be determined on an issue by issue basis. La. Civ. Code Art. 3515.

state law variations to determine whether they pose insurmountable obstacles to certification. *Spence, supra.* Rather, the sum of plaintiffs' research is one case and an exhibit attaching several Uniform Commercial Code sections and their related comments. (Pl. Exh. F). However, as evidenced in the discussion on Rule 23(a) typicality above, simply because a state has adopted the U.C.C. does not mean that its courts have uniformly applied its provisions. As one court has noted, "The Uniform Commercial Code is not uniform." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986). Moreover, plaintiffs have not addressed the potential variances in state law regarding the defenses of prescription and comparative fault. (*See*, Answer).

In support of their motion, plaintiffs cited one non-binding decision that found that the variances in multi-state warranty law were not significant *in that case*. *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942, 956-957 (E.D. La. 2000)(emphasis added). In contrast, numerous courts have recognized the lack of uniformity in contract and warranty claims among the various state laws that preclude certification of a multiple jurisdiction class. *In re Ford Motor Co. Bronco II Product Liability Litigation*, 177 F.R.D. 360, 367 (E.D. La. 1997)(and cases cited therein). The Seventh Circuit has even gone so far as to point blankly hold that warranty, fraud, or products-liability suits may not proceed as nationwide classes. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002)(citations omitted).

We also note that the Fifth Circuit has declined to certify class actions when individual reliance will be an issue. *Castano*, 84 F.3d at 745 (citing, *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973)). In some states, reliance is an element of breach of warranty claims. *Id*. at fn. 20. Likewise, other factual variations cannot be ruled out.

The complexity of the choice of law issues suggested by plaintiffs' putative nationwide

13

class implicates not only Rule 23(b)(3)'s predominance prong, but also the superiority requirement. Even if the plaintiffs were to provide the necessary choice of law and variation of law analysis, and the court was able to wade through the sea of states' interests and laws, the very complexity of the endeavor makes individual trials the preferable alternative, and renders class treatment not superior. *Castano*, 84 F.3d at 750.

We further observe that "[t]he most compelling rationale for finding superiority in a class action" is the existence of a negative value suit. *Castano, supra*. Yet here, the named plaintiffs represent that the cost to repaint their motor home is approximately $ 20,000 – not an insignificant sum. (Ans. to Interr. No. 10). Moreover, if the class members were to prevail in individual suits, Louisiana law, and likely the consumer laws of other states, would allow an award of attorney's fees.[14]

In sum, plaintiffs have not established that common questions of law or fact predominate and/or that a class action is the superior means of redress.

For the foregoing reasons,

IT IS RECOMMENDED that plaintiffs' motion for leave to amend their complaint [doc. # 36] be GRANTED (save for the joinder of Fleetwood Homes of Indiana, Inc.).

IT IS FURTHER RECOMMENDED that plaintiffs' motion for class certification [doc. # 25] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

---

[14] The Magnuson-Moss Act also provides for attorney's fees. 15 U.S.C. § 2310.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 5th day of July, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE